UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHAUNCY RAMOS,

                        **Petitioner,**

          *- against -*

SUPERINTENDENT,
SING SING CORRECTIONAL FACILITY,

                      **Respondent.**

**11 Civ. 4929 (VB)(PED)**

**REPORT AND
RECOMMENDATION**

TO:   **THE HONORABLE VINCENT BRICCETTI,
UNITED STATES DISTRICT JUDGE**

## I. INTRODUCTION

Petitioner Chauncy Ramos, through counsel, seeks a writ of *habeas corpus* pursuant to

28 U.S.C. § 2254. Petitioner was convicted on November 16, 2004, following a non-jury trial in

Westchester County Court (DiBella, J.), of one count of assault in the second degree and two

counts of criminal possession of a weapon in the third degree. For the assault conviction,

Petitioner was sentenced as a persistent violent felony offender to an indeterminate term of

twenty years to life. For each of the criminal possession of a weapon convictions, Petitioner was

sentenced as a persistent felony offender to an indeterminate term of twenty years to life. These

terms were ordered to run concurrently with each other and consecutively to the indeterminate

term of eight years to life for which Petitioner had been on parole at the time that he committed

the crimes giving rise to the instant convictions.

This petition is before me pursuant to an order of reference. See Dkt. No. 7. For the

reasons set forth below, I respectfully recommend that the petition be **DENIED**.

## II. BACKGROUND[1]

### A.      The Crime

On February 26, 2004, at approximately 2:00 p.m., in a commercial parking lot at 333 Westchester Avenue in White Plains, New York, Petitioner parked his vehicle, a green Jeep Liberty, behind the vehicle of a woman, Erica Cunningham, who recently had exited an office building on the property.  Petitioner approached Cunningham as she was getting into her own vehicle, showed her a map and asked for directions, and then stunned her with a stun gun.  A physical struggle between Petitioner and Cunningham thereafter ensued during which Petitioner stunned Cunningham more than once, pulled her hair, and struck her repeatedly.  Cunningham fought back and removed the identification badge that Petitioner wore around his neck.  After eyewitnesses began to gather in the parking lot, and some had called the police, Petitioner fled the scene in his Jeep.  Petitioner, however, returned to the scene shortly thereafter, approached Cunningham once more, and, following an additional struggle in front of the eyewitnesses, retrieved his identification badge from Cunningham.  Petitioner then fled the scene in his Jeep once again.

### B.      The Police Investigation

Some police units arrived on the scene, while others located Petitioner and his vehicle on the entrance ramp to the Hutchinson Parkway, not far from the scene.  Officers saw Petitioner, whose Jeep had a flat tire, throwing items over the guardrail.  Items that subsequently were

---

[1] Unless otherwise indicated, the information within this section is taken from a review of the petition ("Pet."), Dkt. No. 1, Petitioner's declaration in support, Dkt. No. 10, Petitioner's memorandum of law ("Pet'r's Mem."), Dkt. No. 11, and Petitioner's reply memorandum of law, ("Pet'r's Reply Mem."), Dkt. No. 18; Respondent's affidavit in opposition ("Carmody Aff."), Dkt. No. 15, and memorandum of law in opposition ("Resp't's Mem."), Dkt. No. 16; Petitioner's direct appeal brief ("Pet'r's App. Br."), Carmody Aff., Ex. G; and Respondent's direct appeal brief ("Resp't's App. Br."), Carmody Aff., Ex H.

recovered by police included a stun gun, a knife, several condoms, a cold-weather "gator" mask, and a ski cap.  In the meantime, officers on the scene interviewed Cunningham and several other eyewitnesses and subsequently transported them, individually, to the location where Petitioner had been apprehended.  All of the witnesses identified Petitioner as the person who had attacked Cunningham.

Cunningham was subsequently brought to the police station where she was interviewed by police.  A few hours after the incident, and after her interview was complete, Cunningham was taken to the hospital where she was treated with Tylenol and bacitracin ointment for abrasions, burns, and swelling to her face, neck, arm, and legs.

Petitioner was questioned at the police station by Detective Walter Holubis and Detective Michael Connolly.  Petitioner initially told these officers that Cunningham's name was "Brenda," that he recently had gone on one date with her and then failed to call her again, and that, when he happened to see her in the parking lot, she attacked him with a stun gun that she had in her possession because she was angry that he had not called her.  After intermittent questioning by the officers for another hour or two, during which the officers told Petitioner that Cunningham's version of events contradicted Petitioner's—including to the extent that Cunningham represented that Petitioner was a stranger to her—Petitioner gave the officers another statement which was reduced to writing by Detective Connolly.  In his subsequent statement, Petitioner told the officers that he had approached Cunningham, who was unknown to him, for directions, that she panicked unnecessarily and would not calm down, and that he thereafter stunned her with a "zapper" that he had in his possession.

## C.      The Indictment and Pre-Trial Proceedings

The Westchester County Grand Jury returned an indictment charging Petitioner with one

count of attempted kidnapping in the second degree, in violation of New York Penal Law §§

110.00 and 135.20;[2] one count of assault in the second degree, in violation of New York Penal

Law § 120.05(6);[3] one count of assault in the second degree, in violation of New York Penal

Law § 120.05(2);[4] one count of criminal possession of a weapon in the third degree,[5] in violation

of New York Penal Law § 265.02(1);[6] and a second count of criminal possession of a weapon in

the third degree, in violation of New York Penal Law § 265.02(1).[7]  Carmody Aff., Ex. A.

---

[2] "A person is guilty of kidnapping in the second degree when he abducts another person."  N.Y. Penal Law § 135.20.  "A person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime."  N.Y. Penal Law § 110.00.

[3] "A person is guilty of assault in the second degree when . . . "[i]n the course of and in furtherance of the commission or attempted commission of a felony . . . , or of immediate flight therefrom, he . . . causes physical injury to a person other than one of the participants . . . ."  N.Y. Penal Law § 120.05(6).

[4] "A person is guilty of assault in the second degree when . . . [w]ith intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument."  N.Y. Penal Law § 120.05(2).

[5] The Court notes that both counts of criminal possession of a weapon as set forth in the indictment "mistakenly stated the crime as criminal possession of a weapon in the second degree."  Resp't's App. Br. at 22–23.  Both counts were charged pursuant to New York Penal Law § 265.02(1), with one referencing Petitioner's possession of a "dangerous instrument" and one referencing Petitioner's possession of an "electronic stun gun," although the indictment incorrectly refers to New York Penal Law § 265.03(1) as the basis for one of these charges.  See id.

[6] "A person is guilty of criminal possession of a weapon in the third degree when . . . [s]uch person commits the crime of criminal possession of a weapon in the fourth degree as defined in subdivision one, two, three or five of section 265.01, and has been previously convicted of any crime . . . ."  N.Y. Penal Law § 265.02(1).  "A person is guilty of criminal possession of a weapon in the fourth degree when . . . [h]e possesses any . . . dangerous or deadly instrument or weapon with intent to use the same unlawfully against another . . . ."  N.Y. Penal Law § 265.01(2).

[7] "A person is guilty of criminal possession of a weapon in the third degree when . . . [s]uch person commits the crime of criminal possession of a weapon in the fourth degree as defined in subdivision one, two, three or five of section 265.01, and has been previously

Beginning on August 30, 2004, the trial court conducted pre-trial suppression hearings. Petitioner sought to suppress evidence concerning eyewitness identifications, Petitioner's prior convictions, and the post-arrest statements that Petitioner had made to the police.  The trial court denied Petitioner's applications to suppress evidence concerning identifications and post-arrest statements, but limited the inquiry that the prosecution would be permitted to make regarding Petitioner's prior convictions in the event that Petitioner testified at trial.  Petitioner had testified during the suppression hearing regarding the police interrogation and claimed that his post-arrest statements had been coerced, but the trial court discredited Petitioner's testimony and instead credited the testimony offered by the police officers.  See Dkt. No. 26 ("Pre-Trial Hr'g Tr.") at 293–305.

On September 8, 2004, following an allocution by the trial court, Petitioner waived his right to a jury trial and instead agreed to a bench trial.  See Pre-Trial Hr'g Tr. at 270–78.

## D.     The Trial and Conviction

Petitioner's trial commenced on September 9, 2004.  During the trial, the court received testimony from Cunningham, two eyewitnesses to the altercation between Petitioner and Cunningham, and various police witnesses.  Cunningham testified that Petitioner approached her with a map and asked her for directions as she was getting into her car for her lunch break.  She claimed that he thereafter attacked her with the stun gun and with his hands and that he stunned her at least twice, in the neck and on the leg.  Cunningham testified that the stun gun remained in Petitioner's hands throughout the struggle.  Cunningham further testified that Petitioner pulled her hair and legs and tried to remove her from her car.  Cunningham also testified that, during

_____

convicted of any crime . . . ."  N.Y. Penal Law § 265.02(1).  "A person is guilty of criminal possession of a weapon in the fourth degree when . . . [h]e . . . possesses any . . . electronic stun gun . . . ."  N.Y. Penal Law § 265.01(1).

the struggle, she was able to remove the identification badge that Petitioner was wearing around his neck. The other eyewitnesses testified that they saw Petitioner attacking Cunningham with his hands, believed that the struggle was a domestic dispute between Petitioner and Cunningham, and called the police. The witnesses testified that Petitioner fled the scene after people began to gather in the parking lot. They testified that Petitioner returned to the scene shortly thereafter, however, approached Cunningham, and retrieved his badge from her possession before fleeing once again. Cunningham and the other eyewitnesses identified Petitioner as the perpetrator of the attack. The police officer witnesses testified regarding the identification and arrest of Petitioner, the recovery of evidence from in and around Petitioner's vehicle, the post-arrest statements made by Petitioner, and Cunningham's observable injuries, cooperation with the police, and visit to the hospital. Cunningham also testified regarding her injuries, including scrapes, bruises, abrasions, and burns from the stun gun, as well as her treatment, including ice packs, bacitracin ointment, and Tylenol. She also testified that she experienced substantial pain for weeks and continued to experience some pain on occasion. She further testified that she was out of work for more than one month following the incident. Photographs of Cunningham's injuries were admitted into evidence. See Dkt. No. 27 ("Trial Tr.") at 405–18, 420–21, 440–52, 475–84, 486–90, 493–514, 546–55, 681–95.

The court also admitted the testimony of two expert witnesses called by the prosecution. The first, Thomas Welles, was an electrical engineer who testified regarding the operational and electrical capabilities of the stun gun. He testified that, in his opinion, the stun gun was capable of emitting 20,000 volts which would render it a high-voltage instrument. The second, Dr. Timothy Haydock, was an emergency room physician with experience treating electrical injuries. He testified that, based on an electrical capability of 20,000 volts, in his opinion, the

stun gun used by Petitioner would have been capable of causing significant injury, including numbness, burns, and disruption to various organs and bodily systems, depending upon where on the body the weapon was applied.  See id. at 635–47, 730–59.

At the conclusion of the prosecution's case, Petitioner's trial counsel moved to dismiss all charges on the ground that the prosecution had not established the elements of any of the crimes charged.  Trial counsel especially emphasized the insufficiency of the evidence as to the charges of attempted kidnapping in the second degree and the first count of assault in the second degree.  With regard to the second count of assault in the second degree, Petitioner's counsel argued that the prosecution had failed to present evidence that was sufficient to establish that Cunningham had suffered a physical injury or that the stun gun was a dangerous instrument within the meaning of the law.  Petitioner's counsel further moved to dismiss one of the criminal possession of a weapon counts on the ground that the prosecution had not established that the stun gun was a dangerous instrument.  The trial court ultimately granted Petitioner's motion to dismiss as to attempted kidnapping in the second degree on the ground that the evidence was insufficient to establish the elements of that crime, but denied Petitioner's motion in all other respects.[8]  See Trial Tr. at 774–789, 836, 858–60.

Petitioner's trial counsel called two witnesses for the defense.  First, Jillian Hearn, a friend of Petitioner who had been with Petitioner just prior to the incident, testified that she had searched for her wallet in Petitioner's car that morning and, while doing so, had not seen a stun gun in his car.  Second, Carmen Velez, another friend of Petitioner, testified that she had given Petitioner the condoms that were recovered from his car because she had been concerned for

_____

[8] Because the first count of assault in the second degree charged in the indictment depended upon a conviction for attempted kidnapping, this charge also was dismissed as a matter of law.

7

Petitioner's health, and for the health of all her friends.  Following an allocution by the court,
Petitioner, on advice of his counsel, declined his right to testify on his own behalf.  See Trial Tr.
at 804–09, 819–20, 829–31, 835–36.

On September 28, 2004, the trial court found that Petitioner was guilty of one count of
assault in the second degree and two counts of criminal possession of a weapon in the third
degree.  The trial court concluded that there was sufficient evidence to establish that the stun
gun, as it was used, attempted to be used, or threatened to be used—both to stun and to bludgeon
Cunningham—was a dangerous instrument and that Cunningham had suffered physical injuries.
See Trial Tr. at 860–65.

### E.     The Persistent Felony Offender Hearing and Sentencing

On November 9, 2004, the court held a persistent felony offender hearing and arraigned
Petitioner on the persistent felony offender and persistent violent felony offender statements that
had been filed by the prosecution.  Petitioner's counsel noted at the outset of the hearing that
Petitioner wished to make certain motions that counsel did not believe were meritorious.
Petitioner proceeded to challenge several of his prior convictions as unconstitutional, but the trial
court rejected each of these challenges and determined that Petitioner was both a persistent
violent felony offender, with respect to the assault conviction, and a persistent felony offender,
with respect to each of the criminal possession of a weapon convictions.  See Dkt. No. 28 ("PFO
Hr'g Tr.").

On November 16, 2004, Petitioner appeared for sentencing.  Petitioner challenged certain
statements that were set forth in his pre-sentence investigation report and argued that he could
not be convicted on the basis of those representations unless they were facts found by a jury.
The trial court, however, rejected Petitioner's application and sentenced Petitioner (1) as a

8

persistent violent felony offender to an indeterminate term of twenty years to life for his

conviction of assault in the second degree, and (2) as a persistent felony offender to an

indeterminate term of twenty years to life for each of his convictions of criminal possession of a

weapon in the third degree.  These terms were to run concurrently to one another and

consecutively to the indeterminate term of eight years to life to which Petitioner had been

sentenced for a prior conviction and for which Petitioner had been on parole at the time that he

committed the instant crimes.  See Dkt. No. 29 ("Sentencing Tr.").

**F.      The Direct Appeal**

On or about November 22, 2004, Petitioner appealed his convictions to the Second

Department.  Petitioner's initial direct appeal brief was filed on or about November 21, 2005.

Petitioner thereafter filed a motion to submit a *pro se* supplemental brief, but the Second

Department denied that motion on January 18, 2006.  On January 24, 2006, the prosecution filed

its opposition brief.  On February 23, 2006, Petitioner's reply brief was filed.  The Second

Department granted the prosecution's motion to strike portions of the reply brief and appendix

that referenced off-the-record material and ordered Petitioner to remove that material or file a

replacement reply brief with the court.  Petitioner filed a replacement reply brief on or about

April 21, 2006.

On or about July 24, 2006, Petitioner, through new counsel, filed a motion to withdraw

Petitioner's direct appeal brief and requested six months to determine whether to adopt the

previously filed brief or submit a new appellate brief and appendix.  On August 31, 2006, the

Second Department granted Petitioner's motion.  On or about February 2, 2007, Petitioner filed a

replacement brief and appendix.  The prosecution moved to strike the replacement brief on the

ground that it contained off-the-record material, including references to the substance of a newly

9

retained medical expert's opinion.  On March 8, 2007, the Second Department granted the

prosecution's motion in part and directed that certain specific references, including the

references to the off-the-record expert opinion, be stricken.  On or about March 20, 2007,

Petitioner filed a second replacement brief from which those portions directed by the court had

been stricken.  The prosecution filed its opposition brief on May 14, 2007.

Petitioner raised the following issues on direct appeal:

(1)     the trial court improperly arraigned Petitioner on the amended special
        information in violation of his due process rights, see Pet'r's App. Br. at
        11–12;
(2)     the injuries sustained by Cunningham did not warrant an amendment to
        the indictment to assault in the second degree, id. at 12–15;
(3)     the trial court improperly admitted Petitioner's post-arrest custodial
        statements, id. at 15–19;
(4)     the evidence at trial was legally insufficient to establish either that the stun
        gun was a dangerous instrument or that Cunningham had sustained
        physical injury as was necessary to support the conviction for assault in
        the second degree, id. at 19–29;
(5)     the evidence at trial was legally insufficient to establish that the stun gun
        was a dangerous instrument as was necessary to support the conviction for
        criminal possession of a weapon in the third degree, id. at 29–32;
(6)     the trial court erred and abused its discretion by admitting the opinion testimony
        of Dr. Haydock and Det. Madeline Cano, id. at 32–36;
(7)     the trial court erred in sentencing Petitioner as a persistent felony offender on the
        basis of an enhanced misdemeanor in violation of New York state law and the
        Eighth Amendment, id. at 36–45;
(8)     trial counsel was ineffective for (a) failing to prove that Petitioner himself had
        stun gun injuries and that Cunningham actually was the possessor of the stun gun
        and the assailant, (b) failing to obtain proof that the stun gun was not readily
        capable of causing death or serious physical injury, including failure to retain any
        expert witness to testify on Petitioner's behalf (c) failing to discredit
        Cunningham, and (d) abandoning Petitioner at the persistent felony offender
        hearing and sentencing, id. at 46–57;
(9)     the inaccuracy of the pre-sentence report and the trial court's having rendered its
        sentence based on facts that were not found by a jury denied Petitioner due
        process, id. at 57–60.

The Second Department affirmed Petitioner's conviction on November 13, 2007.  The

court concluded that the trial court had "properly denied that branch of [Petitioner's] motion

10

which was to suppress his statements to law enforcement officials." People v. Ramos, 45 A.D.3d 702, 703 (2d Dep't 2007).  The court further found that the evidence presented at trial, when viewed "in the light most favorable to the prosecution," was "legally sufficient to establish beyond a reasonable doubt [Petitioner's] guilt of the crimes of assault in the second degree and criminal possession of a weapon in the third degree" and that the verdict "was not against the weight of the evidence." Id. (internal citation omitted).  Additionally, the court concluded that Petitioner was "properly adjudicated a persistent felony offender for his conviction on each of the counts of criminal possession of a weapon in the third degree because he was previously convicted of two or more felonies, and was imprisoned for those felonies before the commission of the present felonies" and that the trial court "providently exercised its discretion in finding that 'the history and character of [Petitioner] and the nature and circumstances of his criminal conduct indicate that extended incarceration and life-time supervision will best serve the public interest.'" Id. at 703–04 (quoting N.Y. Penal Law § 70.10(2)).  Finally, the court held that Petitioner's "remaining contentions [we]re without merit." Id. at 704.

By letter dated December 17, 2007, Petitioner requested leave to appeal the Second Department's decision to the Court of Appeals.  Carmody Aff., Ex. X.  In his application, Petitioner requested leave on the following grounds:

(1)     whether Petitioner's sentence was legal given that it was "enhanced based on facts not found by the jury;"
(2)     whether the assault in the second degree conviction was supported by legally sufficient evidence or the weight of the evidence;
(3)     whether Petitioner's sentence, based on "double enhancement," was unlawful;
(4)     whether Petitioner's sentence violated the Eighth Amendment because he was never constitutionally sentenced as a "Violent Predicate Felon" before being sentenced as a "Persistent Violent Felony Offender;" and
(5)     whether Petitioner's due process rights were violated when he was sentenced based upon "incorrect information" in his pre-sentence report.

11

Id.  Notably, Petitioner did not seek leave to appeal the Second Department's decisions on the following issues:

(1)     whether the trial court improperly admitted Petitioner's post-arrest statements;
(2)     whether the evidence was legally sufficient to support his conviction for criminal possession of a weapon in the third degree; and
(3)     whether trial counsel had provided ineffective assistance.

Id.  Petitioner's request for leave to appeal was denied by the Court of Appeals on February 29, 2008.  People v. Ramos, 10 N.Y.3d 770 (2008) (table opinion).

## G.     The State Court Collateral Proceedings

### 1.     *Motion to Set Aside the Sentence*

On or about October 31, 2008, Petitioner filed a motion to set aside his sentence pursuant to New York Criminal Procedure Law § 440.20.  Carmody Aff., Ex. J.  Petitioner argued, based on the same double enhancement grounds that he had presented on direct appeal, that his sentence for the criminal possession of a weapon convictions should be set aside and that he should be re-sentenced.  Petitioner further argued that New York's discretionary and mandatory persistent felony offender statutes were unconstitutional under Apprendi v. New Jersey, 530 U.S. 466 (2000), and that his sentence, therefore, was unconstitutional.  Petitioner also challenged the validity of Almendarez-Torres v. United States, 523 U.S. 224 (1998), in which the Supreme Court held that a judge, as opposed to a jury, may find the fact of a defendant's prior conviction without violating the Sixth Amendment.  The prosecution opposed Petitioner's motion.  Carmody Aff., Ex. K.

On June 24, 2009, the trial court denied Petitioner's motion.  Id., Ex. M.  The court held that, because Petitioner had "challenged the propriety of his sentence as a persistent felony offender . . . on his direct appeal . . . , this issue was previously determined on the merits and

denial of the instant motion is mandated." Id. at 3 (citing N.Y. Crim. Proc. Law § 440.20).  The

court alternatively denied this claim on the merits, holding that the New York Court of Appeals

has repeatedly upheld New York's discretionary persistent felony offender statute, found that the

statute comports with Apprendi, and approved enhanced sentences that were imposed in

accordance therewith as constitutional.  Id. at 3–5.  The court rejected Petitioner's contention

that New York's mandatory persistent violent felony statute is unconstitutional, noting that the

"Second Department has rejected claims similar to [Petitioner's] as being without merit." Id. at

5.  The court also noted that Petitioner previously had been adjudicated a persistent violent

felony offender when he was sentenced for a 1992 conviction.  Id.

Petitioner requested leave to appeal the trial court's decision on his motion, but, on

September 9, 2009, the Second Department denied his request.  Carmody Aff., Ex. N.

   2.    *Motion to Vacate the Judgment of Conviction*

On or about July 24, 2009, Petitioner filed a motion to vacate his judgment of conviction

pursuant to New York Criminal Procedure Law § 440.10.  Carmody Aff., Ex. O.  In this motion,

Petitioner raised a claim for ineffective assistance of trial counsel based on the following alleged

deficiencies:

   (1)   failure to investigate and present medical expert testimony regarding stun
         gun injuries;
   (2)   failure to investigate and call Petitioner's friend Michael Cannaday as an
         exculpatory witness;
   (3)   failure to call Petitioner's friend Jillian Hearn as a witness at Petitioner's
         pre-trial suppression hearing to bolster Petitioner's testimony regarding
         the coercive tactics used by the police;
   (4)   refusal to allow Petitioner to testify without conducting a proper
         investigation;
   (5)   failure to object to material misstatements that were set forth in
         Petitioner's pre-sentence report;
   (6)   abandonment of Petitioner at his persistent felony offender and sentencing
         proceedings; and

13

(7)     the cumulative weight of all of the above errors.

Id. at 21–45.  The prosecution opposed Petitioner's motion.  Carmody Aff., Ex. P.

The trial court denied Petitioner's motion on or about November 19, 2009.  Carmody

Aff., Ex. Q.  With regard to Petitioner's claim that counsel was ineffective for having failed to

investigate and present medical expert testimony, the court determined that Petitioner had

"raised the exact issue on his direct appeal of counsel's claimed ineffectiveness for failing to call

a medical expert with respect to the stun gun injuries in the case."  Id. at 8.  The court concluded

that, because the claim had been "found to be without merit by the Appellate Division following

his direct appeal," this claim was procedurally barred from review on Petitioner's collateral

motion.  Id. (citing New York Criminal Procedure Law § 440.10(2)(a) which provides that "the

court must deny a motion to vacate a judgment when . . . [t]he ground or issue raised upon the

motion was previously determined on the merits upon an appeal from the judgment").  The court

rejected Petitioner's contention that, because the Second Department had stricken references to

the expert report that Petitioner had obtained post-conviction, the whole issue was removed from

his direct appeal, instead noting that Petitioner had continued to advance this argument in his

direct appeal brief even after removing the references that had been identified by the court.  Id.

Alternatively, the court rejected this claim on the merits.  See id. at 8–10.

The trial court rejected Petitioner's contentions that trial counsel was ineffective for

having failed to call Cannaday as a witness at trial and having failed to call Hearn as a witness at

the suppression hearing on the merits.  See id. at 10–11, 13–14.  With regard to Petitioner's

claim that his trial counsel was ineffective for having failed to permit him to testify on his own

behalf, the court determined that this claim was "procedurally barred" because it was "directly

contradicted by the court record in this case" as the trial transcript reflected Petitioner's

14

statement to the trial court that "he did not wish to testify." Id. at 11–13 (citing New York

Criminal Procedure Law § 440.30(4)(d) which provides that the court "may deny" a claim raised

in a collateral motion "without conducting a hearing" if "[a]n allegation of fact essential to

support the motion . . . is contradicted by a court record" . . . and "under these and all the other

circumstances attending the case, there is no reasonable possibility that such allegation is true").

The court also noted that, given that the trial court had discredited Petitioner's testimony at the

pre-trial suppression hearing, "it was a legitimate tactic for [his] trial counsel to advise him not

to testify at the trial." Id. at 13.

Finally, with regard to Petitioner's claim that trial counsel was ineffective for failing to

object to material misstatements in his pre-sentence investigation report, the court denied this

claim because Petitioner had raised it on direct appeal and because, even if he had not, the claim

was record-based and therefore not properly raised via collateral motion. Id. at 14–15 (citing

N.Y. Crim. Proc. Law §§ 440.10(2)(a), 440.10(2)(c)). The court alternatively denied this claim

on the merits. Id. at 15–16.

On December 30, 2009, Petitioner requested leave to appeal the trial court's decision on

this motion, but the Second Department denied this request on May 3, 2010. Carmody Aff, Exs.

R, Y.

**H.     The Error *Coram Nobis* Proceedings**

On July 6, 2010, Petitioner submitted an application for a writ of error *coram nobis* to the

Second Department. Carmody Aff., Ex. S. In this application, Petitioner argued that his

appellate counsel was ineffective because they "made arguments based on materials outside the

record which were not properly before this Court" and, "when the documentary basis for the

arguments were stricken, they failed to ensure that the arguments themselves were completely

removed, thus causing this Court to make a premature decision on the merits." Id. at 8. The

prosecution opposed this application. Carmody Aff., Ex. T.

The Second Department denied Petitioner's application on November 23, 2010.

Carmody Aff., Ex. U. The Court of Appeals denied Petitioner's request for leave to appeal on

April 1, 2011. Carmody Aff., Ex. V.

## I.    The *Habeas Corpus* Proceedings

On July 19, 2011,[9] Petitioner, through his counsel, filed a petition seeking a writ of

*habeas corpus* and raised the following claims:

    (1)    the evidence at trial was legally insufficient to sustain Petitioner's convictions for assault in the second degree or criminal possession of a weapon in the third degree;

    (2)    Petitioner's post-arrest custodial statements were admitted at trial in violation of Petitioner's constitutional rights;

    (3)    Petitioner's due process rights were violated by the admission of incompetent expert testimony;

    (4)    Petitioner received ineffective assistance of trial counsel insofar as trial counsel (a) failed to call a medical expert, (b) failed to investigate and call Michael Cannaday as a witness at trial, (c) failed to call Jillian Hearn as a witness at the pre-trial suppression hearing, (d) refused to allow Petitioner to testify on his own behalf at trial, (e) failed to object to material misstatements in the pre-sentence report, (f) abandoned Petitioner at the persistent felony offender hearing and at sentencing, and (g) failed to discredit Cunningham as a witness, and Petitioner suffered prejudice as the result of the cumulative weight of these various errors;

    (5)    Petitioner received ineffective assistance of appellate counsel insofar as appellate counsel asserted off-the-record matters on direct appeal, which resulted in a merits decision by the Second Department on these issues, and therefore improperly precluded collateral review; and

    (6)    the trial court improperly used an enhanced misdemeanor as a predicate for sentencing Petitioner as a persistent felony offender and deemed Petitioner a persistent felony offender and persistent violent felony offender based on facts that were neither admitted nor proven to a jury.

---

[9] Petitioner alleges in his petition that, although his conviction became final on May 21, 2008, his petition is timely because the one-year statute of limitations was tolled by his state court collateral motions and his application for a writ of error *coram nobis*. Pet. at 14–15. Respondent does not challenge the timeliness of the petition.

Dkt. No. 1.  On October 28, 2011, Petitioner filed a supporting factual declaration and memorandum of law.  Dkt. Nos. 10–11.  Respondent's opposition was filed on March 8, 2012.  Dkt. Nos. 15–16.  On April 20, 2012, Petitioner's counsel submitted a reply memorandum.  Dkt. No. 18.

On April 18, 2012, Petitioner submitted a *pro se* motion to amend his petition.  Dkt. No. 19.  Following a telephone conference with counsel for both parties in which Petitioner's counsel "expressly declined to adopt the motion" and represented that he did "not seek to amend the petition," this Court issued an order on May 17, 2012 indicating that it would not entertain Petitioner's *pro se* motion.  Dkt. No. 21.

On September 5, 2013, Petitioner, through counsel, filed another motion to amend the petition in which he requested that the Court consider additional arguments and legal authority in support of his legally insufficient evidence and double enhancement sentencing claims.  Dkt. Nos. 24–25.  Petitioner recently had presented these arguments to the state courts in his motion to reargue his direct appeal, which was filed with the Second Department on January 9, 2013.  Because these arguments relate to two of Petitioner's existing *habeas* claims, the Court granted Petitioner's motion on September 19, 2013 only to the extent that the Court agreed to consider the arguments as they relate to his existing claims.  Dkt. No. 31.

### III. <u>DISCUSSION</u>

A.      <u>Applicable Law on *Habeas Corpus* Review</u>

"Habeas review is an extraordinary remedy."  <u>Bousley v. United States</u>, 523 U.S. 614, 621 (1998) (citing <u>Reed v. Farley</u>, 512 U.S. 339, 354 (1994)).  Before a federal district court may review the merits of a state criminal judgment in a *habeas corpus* action, the court must first

determine whether the petitioner has complied with the procedural requirements set forth in 28 U.S.C. §§ 2244 and 2254.  If there has been procedural compliance with these statutes, the court must then determine the appropriate standard of review applicable to the petitioner's claims in accordance with § 2254(d).  The procedural and substantive standards applicable to *habeas* review, which were substantially modified by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1220 (Apr. 24, 1996), are summarized below.

      1.    *Timeliness Requirement*

A federal *habeas corpus* petition is subject to AEDPA's strict, one-year statute of limitations.  See 28 U.S.C. § 2244(d).  The statute provides four different potential starting points for the limitations period and specifies that the latest of these shall apply.  See id. § 2244(d)(1).  Under the statute, the limitations period is tolled only during the pendency of a properly filed application for State post-conviction relief, or other collateral review, with respect to the judgment to be challenged by the petition.  See id. § 2244(d)(2).  The statute reads as follows:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (d)(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Id. § 2244(d).

The one-year limitation period is subject to equitable tolling, which is warranted when a petitioner has shown "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland v. Florida, 560 U.S. 631, __, 130 S. Ct. 2549, 2562 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). In the Second Circuit, equitable tolling is confined to "rare and exceptional circumstance[s]," Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam) (internal quotation marks omitted), which have "prevented [the petitioner] from filing his petition on time," Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000) (internal quotation marks and emphasis omitted). The applicant for equitable tolling must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." Id.

2.    *Exhaustion Requirement*

A federal court may not grant *habeas* relief unless the petitioner has first exhausted his claims in state court. O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); see 28 U.S.C. § 2254(b)(1) ("[a]n application for a writ of habeas corpus on behalf of a person in custody

pursuant to the judgment of a State court shall not be granted unless it appears that – (A) the applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant"); id. § 2254(c) (the petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented").  The exhaustion requirement promotes interests in comity and federalism by demanding that state courts have the first opportunity to decide a petitioner's claim.  See Rose v. Lundy, 455 U.S. 509, 518–19 (1982).

To exhaust a federal claim, the petitioner must have "fairly present[ed] his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim," and thus "giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Baldwin v. Reese, 541 U.S. 27, 29 (2004) (internal quotation marks omitted).  "Because non-constitutional claims are not cognizable in federal habeas corpus proceedings, a habeas petition must put state courts on notice that they are to decide federal constitutional claims." Petrucelli v. Coombe, 735 F.2d 684, 687 (2d Cir. 1984) (internal citation omitted) (citing Smith v. Phillips, 455 U.S. 209, 221 (1982)).  Such notice requires that the petitioner "apprise the highest state court of both the factual and legal premises of the federal claims ultimately asserted in the habeas petition." Galdamez v. Keane, 394 F.3d 68, 73 (2d Cir. 2005).  A claim may be "fairly presented" to the state courts, therefore, even if the petitioner has not cited "chapter and verse of the Constitution," in one of several ways:

(a) [R]eliance on pertinent federal cases employing constitutional analysis, (b)

20

> reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

Daye v. Attorney Gen. of State of N.Y., 696 F.2d 186, 194 (2d Cir. 1982). A *habeas* petitioner who fails to meet a state's requirements to exhaust a claim will be barred from asserting that claim in federal court. Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

However, "[f]or exhaustion purposes, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." Reyes v. Keane, 118 F.3d 136, 139 (2d Cir. 1997) (internal quotation marks omitted). "In such a case, a petitioner no longer has remedies available in the courts of the State within the meaning of 28 U.S.C. § 2254(b)." Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991) (internal quotation marks omitted). Such a procedurally barred claim may be deemed exhausted by a federal *habeas* court. See, e.g., Reyes, 118 F.3d at 139. However, absent a showing of either "cause for the procedural default and prejudice attributable thereto," Harris v. Reed, 489 U.S. 255, 262 (1989), or "actual innocence," Schlup v. Delo, 513 U.S. 298 (1995), the petitioner's claim will remain unreviewable by a federal court.

Finally, notwithstanding the procedure described above, a federal court may yet exercise its discretion to review and deny a mixed petition containing both exhausted and unexhausted claims, if those unexhausted claims are "plainly meritless." Rhines v. Weber, 544 U.S. 269, 277 (2005); see 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); see also, e.g., Padilla v. Keane, 331 F. Supp. 2d 209, 216 (S.D.N.Y. 2004) (interests in judicial economy warrant the dismissal of meritless, unexhausted claims).

3.      *Procedural Default*

Even where an exhausted and timely *habeas* claim is raised, comity and federalism demand that a federal court abstain from its review when the last-reasoned state court opinion to address the claim relied upon "an adequate and independent finding of a procedural default" to deny it.  Harris, 489 U.S. at 262; see also Coleman v. Thompson, 501 U.S. 722, 730 (1991); Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991); Levine v. Comm'r of Corr. Servs., 44 F.3d 121, 126 (2d Cir. 1995).

A state court decision will be "independent" when it "fairly appears" to rest primarily on state law.  Jimenez v. Walker, 458 F.3d 130, 138 (2d Cir. 2006) (citing Coleman, 501 U.S. at 740).  A decision will be "adequate" if it is "'firmly established and regularly followed' by the state in question."  Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999) (quoting Ford v. Georgia, 498 U.S. 411, 423–24 (1991)).

4.      *AEDPA Standard of Review*

Before a federal court can determine whether a petitioner is entitled to federal *habeas* relief, the court must determine the proper standard of review under AEDPA for each of the petitioner's claims.  28 U.S.C. § 2254(d)(1)–(2).  This statute "modifie[d] the role of federal habeas courts in reviewing petitions filed by state prisoners," and imposed a more exacting standard of review.  Williams v. Taylor, 529 U.S. 362, 402 (2000).  For petitions filed after AEDPA became effective, federal courts must apply the following standard to cases in which the state court adjudicated on the merits of the claim:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the State
> court proceeding.

§ 2254(d)(1)–(2).  The deferential AEDPA standard of review will be triggered when the state

court has both adjudicated the federal claim "on the merits" and reduced its disposition to

judgment.  Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001).  Where the state court "did not

reach the merits" of the federal claim, however, "federal habeas review is not subject to the

deferential standard that applies under AEDPA . . . .  Instead, the claim is reviewed *de novo*."

Cone v. Bell, 556 U.S. 449, 472 (2009); see § 2254(d).

Under the first prong of the AEDPA deferential standard, a state court decision is

contrary to federal law only if it "arrives at a conclusion opposite to that reached by [the

Supreme Court] on a question of law or if [it] decides a case differently than [the Supreme

Court] has on a set of materially indistinguishable facts."  Williams, 529 U.S. at 413.  A decision

involves an "unreasonable application" of Supreme Court precedent if the state court "identifies

the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies it to

the facts of the particular state prisoner's case," or if it "either unreasonably extends a legal

principle from [Supreme Court] precedent to a new context where it should not apply or

unreasonably refuses to extend that principle to a new context where it should apply."  Id. at 407.

Under the second prong of AEDPA, the factual findings of state courts are presumed to

be correct.  28 U.S.C. § 2254(e)(1); see Nelson v. Walker, 121 F.3d 828, 833 (2d Cir. 1997).

The petitioner must rebut this presumption by "clear and convincing evidence."  § 2254(e)(1).

**B.**     **Analysis of Petitioner's Claims**

1.      _Legally Insufficient Evidence Claim (Claim 1)_

      a.      Assault in the Second Degree

Petitioner argues that the evidence at trial was legally insufficient to support Petitioner's

conviction for assault in the second degree pursuant to New York Penal Law § 120.05(2)

because it failed to prove either that Cunningham suffered a physical injury within the meaning

of the statute or that the stun gun used in the attack was a dangerous instrument.  See Pet. at 6;

Pet'r's Mem. at 37–39.  He argued this claim on direct appeal, and the Second Department

issued a decision on the merits, finding that the evidence presented at trial, when viewed "in the

light most favorable to the prosecution," was "legally sufficient to establish beyond a reasonable

doubt [Petitioner's] guilt of the crimes of assault in the second degree and criminal possession of

a weapon in the third degree." Ramos, 45 A.D.3d at 703 (internal citation omitted).  Petitioner

also presented this claim to the Court of Appeals, where he argued in his letter requesting leave

to appeal that the "[a]ssault second charge was not supported by the sufficiency or weight of the

evidence."  Carmody Aff., Ex. X.  Respondent argues that Petitioner's legally insufficient

evidence claim is without merit.  See Resp't's Mem. at 8–17.  The Second Department's written

decision affirming Petitioner's assault conviction on the merits represents the last-reasoned state

court decision to address Claim 2.  See Ramos, 45 A.D.3d at 703.  Because the state court

adjudicated this claim on the merits, this Court will assess the merits of the claim using the

deferential AEDPA standard of review.  See 28 U.S.C. § 2254(d).

      "[T]he Due Process Clause of the Fourteenth Amendment protects a defendant in a

criminal case against conviction except upon proof beyond a reasonable doubt of every fact

necessary to constitute the crime with which he is charged." Jackson v. Virginia, 443 U.S. 307,

315 (1979) (internal quotation marks omitted).  However, on _habeas_ review, a claim of legally

insufficient evidence will not succeed where, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319.  A *habeas* petitioner therefore "bears a very heavy burden" to show that no rational finder of fact could have found the substantive elements of the offense beyond a reasonable doubt and succeed on such a claim.  Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 811 (2d Cir. 2000) (internal quotation marks omitted).  "When it considers the sufficiency of the evidence of a state conviction, '[a] federal court must look to state law to determine the elements of the crime.'"  Id. (quoting Quartararo v. Hanslmaier, 186 F.3d 91, 97 (2d Cir. 1999)).  "While . . . the federal court must assess state court findings of guilt for constitutional sufficiency under the 'proof beyond a reasonable doubt' standard, factual determinations made by a state trial court are nonetheless entitled to a 'presumption of correctness' on review in a federal habeas proceeding," and these determinations are entitled to deference as long as they are "'fairly supported by the record.'"  Soto v. Lefevre, 651 F. Supp. 588, 591–92 (S.D.N.Y. 1986) (quoting 28 U.S.C. § 2254(d)(8)), aff'd, 812 F.2d 713 (2d Cir. 1987).

    As noted above, Petitioner was convicted of assault in the second degree, in violation of New York Penal Law § 120.05(2), which provides that "[a] person is guilty of assault in the second degree when . . . [w]ith intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument."  N.Y. Penal Law § 120.05(2).  "Physical injury," as defined by New York law, means "impairment of physical condition or substantial pain."  N.Y. Penal Law § 10.00(9).  "Dangerous instrument" is defined as "any instrument, article or substance . . . which, under the circumstances in which it is used, attempted to be used or threatened to be used, is readily

25

capable of causing death or other serious physical injury." N.Y. Penal Law § 10.00(13). A "serious physical injury" is a "physical injury which creates a substantial risk of death, or which causes death or serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ." N.Y. Penal Law § 10.00(10). Petitioner argues that there was insufficient evidence at trial to show either that Cunningham suffered a physical injury or that the stun gun was a dangerous instrument.

In issuing its verdict, the trial court presented the following findings of fact and conclusions of law. First, the trial court found that the "credible evidence" supported the conclusion that Petitioner had "used a stun gun to stun the victim and to strike her with it about her neck, face, arms and legs during a violent struggle that ensued for three to five minutes." Trial Tr. at 861. The court concluded that "the stun gun under the circumstances in which it was used, attempted to be used, or threatened to be used [was] a dangerous instrument . . . as it was readily capable of causing serious physical injury to . . . Cunningham." Id. As "[c]redible evidence" supporting this conclusion, the trial court noted that Petitioner "approached [Cunningham] with a stun gun in his hand and . . . used it to strike her and to stun her and transmitting an electric shock to her several times." Id. at 862. The court further found that the "stun gun was used both to stun and bludgeon the victim in a violent manner and uncontrolled manner about her head, neck, face, arms and legs" and that, "[u]sed in this way, the stun gun was readily capable of causing serious physical injury." Id. (citing People v. Wooden, 275 A.D.2d 935 (4th Dep't 2000) (finding that "gun that is used as a bludgeon 'is readily capable of causing death or other serious physical injury'" and therefore is a "dangerous instrument") (quoting N.Y. Penal Law § 10.00(13)); People v. Goode, 179 A.D.2d 676 (2d Dep't 1992) (finding that evidence was legally sufficient to support conviction for assault in the second degree where

26

"complainant testified that immediately after he was punched by the defendant, he saw that the

defendant was holding [an object] inside his fist" and that "jury could properly conclude that the

. . . solid metal cylindrical object measuring approximately two inches in length and weighing

about one and one-half pounds, which was used to reinforce the impact of the fist blow, was

'readily capable of causing serious physical injury'") (quoting N.Y. Penal Law § 10.00(13)).

     The trial court further found that Cunningham "did, in fact, suffer physical injury." Id.

The court noted that, "[w]hile some [c]ourts have held that minor cuts, scratches and abrasions

are not alone sufficient to establish the requisite physical injury," "[e]ach case must be viewed

on its own facts and the victim's subjective assessment of pain, as well as medical treatment she

received and loss of time from her employment are all relevant factors to be considered." Id. at

862–63. As noted by the trial court, "[t]he evidence in this case [was] that the victim sought

medical treatment at the hospital, that she had bruises on her thigh and forearm, a burn mark on

her neck from the stun gun and linear scratches on the left side of her face, chin, neck and arm."

Id. The court found that "[a]ll of these injuries were consistent with being struck, stunned and or

[sic] scratched with the stun gun which has a metal tip protruding from its edges" and that,

"[a]fter the incident," Cunningham "felt pain on her left forearm which lasted a couple of

weeks," "still feels pain in that forearm when it rains," and "did not return to work until . . . more

than a month after this incident." Id. at 863–64. The court concluded that "[c]ourts have

repeatedly found this type of evidence to be sufficient to establish physical injury." Id. at 864

(citing Wooden, 275 A.D.2d; People v. Ebron, 267 A.D.2d 396 (2d Dep't 1999); People v.

Sekoll, 254 A.D.2d 797 (4th Dep't 1998); People v. Clarke, 250 A.D.2d 619 (2d Dep't 1998);

People v. Morales, 245 A.D.2d 467 (2d Dep't 1997)).

     The trial record reflects that Cunningham and two other eyewitnesses to the incident

testified that Petitioner attacked Cunningham with his hands.  See id. at 409, 445–46, 482, 502.

Cunningham also testified that she had never removed the stun gun from Petitioner's hands

during the attack and that she felt the stun gun come into contact with her skin, and heard a

buzzing noise, several times during the attack.  See id. at 475–76, 482, 500–01, 502–03, 515–16.

The prosecution's electrical engineer testified that the stun gun used in the attack had a capacity

of 20,000 volts, and the prosecution's medical expert testified that 20,000 volts could cause

disruption to the functionality of bodily organs and systems.  See id. at 645–46, 753–59.  A

reasonable fact finder could conclude, on the basis of this evidence, that Petitioner struck

Cunningham while he had the stun gun in his hands and that he stunned her more than once with

a stun gun emitting 20,000 volts of electricity.  On this record, the Court is unable to conclude

that the state court determination that the evidence was legally sufficient to show that the stun

gun—as it was used, attempted to be used, or threatened to be used—was readily capable of

causing serious physical injury, and therefore was a dangerous instrument, depended upon an

unreasonable determination of the facts or was contrary to, or involved an unreasonable

application of, clearly established federal law.[10]

Additionally, Cunningham's testimony at trial, as well as the photographs of her injuries,

supported the trial court's finding that Cunningham suffered physical injury.  As the trial court

---

[10] The Court notes that both of the "new precedent[-setting] cases out of the New York Court of Appeals" cited by Petitioner in his motion to reargue his direct appeal, see Dkt. No. 25, Ex. A at 4, are distinct from Petitioner's case and do not affect the Court's decision on his legally insufficient evidence claim.  See People v. Hall, 18 N.Y.3d 122, 128 (2011) (finding that the prosecution had failed to prove that a stun gun was a dangerous instrument where the "stun gun was not recovered, and no expert or other witness was called to explain to the jury what a stun gun is, or what it can do"); People v. McKinnon, 15 N.Y.3d 311, 314–17 (2010) (finding that the evidence presented at trial of the victim's "two scars of moderate size on her inner forearm" was "not sufficient to support a finding of serious disfigurement" or "serious physical injury," which were necessary elements for the particular assault counts with which that defendant had been charged).

noted, Cunningham testified that she experienced substantial pain for at least a couple of weeks

after the incident; received medical treatment for her injuries, including the application of

bacitracin ointment and Tylenol; and was out of work for a period of weeks. See id. at 504–12,

529–32. The cases cited by the court support its conclusion that such injuries support a finding

of physical injury within the meaning of New York state law. See Wooden, 275 A.D.2d at 936

(finding that evidence was legally sufficient to establish physical injury where "victim lost

consciousness, fell to the ground and bled profusely after being struck on the side of the head

with the gun" and "suffered a jagged partial thickness laceration to the right side of his head"

and where "physician cleaned the wound, treated it with an antiseptic solution and recommended

that the victim take Tylenol for the pain" and "took pain medication, remained out of work for

one week and continued to experience headaches after the incident"); Sekoll, 254 A.D.2d at 798

(concluding that there was legally sufficient evidence of physical injury where "[t]rooper

testified that . . . he felt pain in his left arm . . . , that the pain in his left arm and shoulder

worsened and that he sought treatment at the hospital," that "[h]e was unable to do anything for

the first two days after the incident," that "he was out of work for a week to 10 days," and that

"[h]e took prescribed muscle relaxants and pain killers and wore a sling on his left arm for three

or four days"); Clarke, 250 A.D.2d at 619–20 (finding that evidence was legally sufficient to

show physical injury where "complainant testified that during the course of the incident, the

defendant inflicted blows to his head which caused head pain for a week, and bruises to the arm,

which prevented him from working for a week"); Morales, 245 A.D.2d at 468–69 (concluding

that evidence was legally sufficient to show physical injury where, "[a]s a result of the

defendant's repeated punches, the complainant sustained bruises to her face, abrasions, red

marks, a black eye, a bump on the left side of her forehead, and pain that lasted 'for a while'"

29

and where, "[a]fter the incident, the complainant applied an ice-pack to her face and needed to take painkillers," "the bruises lasted about one and one-half weeks," and "she experienced bad headaches since the incident"). Accordingly, this Court concludes that the state court determination that the evidence at trial was legally sufficient to support a finding of physical injury was neither contrary to, nor constituted an unreasonable application of the facts, and did not depend upon an unreasonable determination of the facts.

b.    Criminal Possession of a Weapon in the Second Degree

Petitioner also argues that the evidence at trial was legally insufficient to support his conviction for criminal possession of a weapon in the second degree in violation of New York Penal Law § 265.02(1) because it did not show that the stun gun was a dangerous instrument. See Pet. at 6; Pet'r's Mem. at 37–39. New York Penal Law § 265.02(1) provides that "[a] person is guilty of criminal possession of a weapon in the third degree when . . . [s]uch person commits the crime of criminal possession of a weapon in the fourth degree as defined in subdivision one, two, three or five of section 265.01, and has been previously convicted of any crime." N.Y. Penal Law § 265.02(1). Possession of an "electronic stun gun" or a "dangerous or deadly instrument or weapon with intent to use the same unlawfully against another" satisfies the statutory requirement. N.Y. Penal Law §§ 265.01(1), (2). While Respondent opposes this argument on the merits, and while this claim would fail on the merits for the same reasons as set forth above with regard to the assault conviction, the Court raises the issue of exhaustion *sua sponte*. See Mitchell v. Miller, No. 08 Civ. 8495 (NRB), 2009 WL 2924310, at *5 n.12 (S.D.N.Y. Sept. 10, 2009).

The Court notes that Petitioner failed to present this claim in his letter requesting leave to appeal to the New York Court of Appeals and thereby failed to exhaust his claim. See Carmody

30

Aff., Ex. X (arguing only that "[a]ssault second charge was not supported by the sufficiency or weight of the evidence"). Because this claim appears on the trial record, however, it may be deemed exhausted and procedurally defaulted because Petitioner no longer has recourse on this claim in the state courts. See Jordan v. Lefevre, 206 F.3d 196, 198–99 (2d Cir. 2000) (noting that, when application for leave to appeal identifies specific claims, those grounds not mentioned in letter are not "fairly presented" to state's highest court); Figueroa v. Kelly, No. 95 Civ. 0216 (HB), 1995 WL 702327, at *1–2 (S.D.N.Y. Nov. 29, 1995) ("If a petitioner limits the issues to be reviewed in a letter application to the New York Court of Appeals, the other claims presented in his or her Appellate Division brief are not deemed exhausted" but "should be deemed procedurally forfeited for purposes of federal habeas review where the petitioner is now procedurally barred from presenting those claims to the state court."); N.Y. Crim. Proc. Law § 440.10(2)(c) (claims adequately based in the record but not argued on direct appeal must be denied when raised in post-conviction motion). Petitioner has not alleged cause and prejudice to overcome this procedural default, nor has he contended that a fundamental miscarriage of justice might result if the default is not excused. See Sweet v. Bennett, 353 F.3d 135, 141–42 (2d Cir. 2003) (noting that, where petitioner "does not argue cause and prejudice, nor do[es] [the court] see any basis in the record for such an argument," petitioner "could only avoid the consequences of his procedural default . . . if he could show that he is actually innocent"); Reese v. Alexander, 37 F. App'x 5, 8 (2d Cir. 2002) (noting that claim that "is . . . procedurally defaulted . . . may not be reviewed by this court absent a showing of cause for the default and prejudice, or a manifest miscarriage of justice").

   For the reasons set forth above, I respectfully recommend that Claim 1 be denied.

   2.     *Involuntary Post-Arrest Statements Claim (Claim 2)*

Petitioner claims that the "post-arrest custodial statements [that he] allegedly made . . . were admitted in violation of his constitutional rights" because, "[a]fter petitioner was arrested and taken into custody by the White Plains police, the investigating officers physically coerced him and denied his request for an attorney." Pet. at 8 (typeface altered from original). Respondent argues that Petitioner failed to exhaust this claim in the state courts because he failed to present it in his request for leave to appeal to the New York Court of Appeals. See Resp't's Mem. at 18–21.

While Petitioner presented this claim on direct appeal and it was decided on the merits by the Second Department, as Respondent notes, Petitioner did not raise this claim in his letter requesting leave to appeal, see Carmody Aff., Ex. X, and he thereby failed to exhaust this claim. This on-the-record claim, however, may be deemed exhausted and procedurally defaulted because Petitioner now is barred from raising it in the state courts. See Jordan, 206 F.3d at 198–99; Figueroa, 1995 WL 702327, at *1–2; N.Y. Crim. Proc. Law § 440.10(2)(c). As Respondent argues, see Resp't's Mem. at 21, Petitioner alleges neither cause and prejudice to overcome this procedural default nor a fundamental miscarriage of justice that might result if it is not excused. See Reese, 37 F. App'x at 8.

Accordingly, I respectfully recommend that Claim 2 be denied.

3.    _Violation of Due Process Rights Based on Admission of Incompetent Expert Testimony (Claim 3)_

Petitioner next claims that his "due process rights were violated by the admission of incompetent expert testimony," specifically "the testimony of Dr. Timothy Haydock . . . , who had no expertise with respect to either stun guns generally or the specific stun device at issue in this case" and the testimony of Detective Cano regarding her opinion that Cunningham's

"injuries were consistent with being stunned, when she had no education, training or experience that would render her qualified to evaluate such injuries." Pet. at 9 (typeface altered from original). Respondent argues that, as with Claim 2, Petitioner failed to raise this claim in his request for leave to appeal and therefore failed to exhaust this claim in the state courts. Resp't's Mem. at 27–28.

Petitioner raised Claim 3 on his direct appeal, and the Second Department ruled on this claim on the merits; however, as Respondent argues, Petitioner did not present this claim in his letter requesting leave to appeal to the Court of Appeals. See Carmody Aff., Ex. X. As discussed above with regard to Claim 2, Petitioner's failure to raise Claim 3 in his request for leave to appeal constitutes a failure to exhaust this claim. Because Claim 3 appears on the trial record and Petitioner now is unable to raise this claim in the state courts via collateral motion, the claim may be deemed exhausted and procedurally defaulted. See Jordan, 206 F.3d at 198–99; Figueroa, 1995 WL 702327, at *1–2; N.Y. Crim. Proc. Law § 440.10(2)(c).

Because Petitioner has not alleged cause and prejudice nor a fundamental miscarriage of justice that might permit him to circumvent his failure to exhaust, I respectfully recommend that Claim 3 be denied. See Reese, 37 F. App'x at 8.

4. _Ineffective Assistance of Trial Counsel Claim (Claim 4)_

a. Failure to Call Medical Expert

Petitioner claims that his trial counsel was ineffective for having "failed to call a medical expert to show that the complainant's injuries were inconsistent with being inflicted by a stun gun, that petitioner's own injuries were consistent with a stun gun, and that a stun gun was not a 'dangerous instrument' under New York law," as demonstrated by the expert opinion of Dr. Daniel Spitz that Petitioner obtained after his trial. Pet. at 11; Pet'r's Mem. at 10–24.

33

Respondent opposes this claim on the grounds that it is unexhausted, procedurally barred, and without merit.  See Resp't's Mem. at 36–45, 63–70.

Petitioner first presented this claim to the Second Department on direct appeal although he now argues that, because this claim was *dehors* the record, it should have been presented to the trial court in a collateral motion pursuant to New York Criminal Procedure Law § 440.10, rather than on direct appeal.  While, as discussed above, the Second Department struck specific references to the Spitz opinion that Petitioner had included in his direct appeal brief, it did not excise the claim entirely from his appeal, as Petitioner argues.  See Carmody Aff., Ex. W; id., Ex. F at 49 n.11, 50.  Rather, in the final version of the direct appeal brief that he submitted to the Second Department, Petitioner argued that his trial counsel was ineffective, in part, because "[h]e obtained no expert or medical testimony of his own" to show that Cunningham did not have stun gun injuries and failed to "obtain proof," specifically expert testimony, "that the particular stun device was not readily capable of causing death or serious physical injury." Pet'r's App. Br. at 49–52 (typeface altered from original).

After his claim was denied on the merits by the Second Department, Petitioner failed to present this claim in his letter requesting leave to appeal to the New York Court of Appeals.  See Carmody Aff., Ex. X.  Instead, he submitted a collateral motion to the trial court in which he presented this and other ineffective assistance claims.  See Carmody Aff., Ex. O.  In ruling on this claim in the context of that motion, the trial court held that, because Petitioner had "raised the exact issue on his direct appeal of counsel's claimed ineffectiveness for failing to call a medical expert with respect to the stun gun injuries in the case" and because the claim had been "found to be without merit by the Appellate Division following his direct appeal," this claim therefore was "procedurally barred" and had to be denied on Petitioner's collateral motion.

Carmody Aff., Ex. Q  at 8 (citing N.Y. Crim. Proc. Law § 440.10(2)(a)).  Alternatively, the court rejected this claim on the merits.  See id. at 8–10.

Petitioner's central argument is that his claim should not have been found to be procedurally barred when raised on collateral motion—either because (1) the argument's substance had been stricken from his direct appeal brief, and the Second Department, therefore, actually had not decided the claim on the merits; or (2) any procedural default should be excused by Petitioner's appellate counsel having been ineffective for presenting this claim on direct appeal.  The Court, however, does not reach this argument because it concludes instead that Petitioner failed to exhaust this claim on direct appeal.  Petitioner, through his appellate counsel, chose to present this claim to the Second Department on direct appeal but thereafter failed to pursue that appeal through its completion by seeking leave to appeal to the Court of Appeals on this issue.  See Carmody Aff., Ex. X.  As discussed above, this failure constitutes a failure to exhaust.  See Jordan, 206 F.3d at 198–99; Figueroa, 1995 WL 702327, at *1–2.  This claim may be deemed exhausted and procedurally defaulted, however, because, as the trial court held in its decision on Petitioner's collateral motion, Petitioner is now barred from raising this claim—which already was decided on the merits on direct appeal—in the state courts.  See N.Y. Crim. Proc. Law § 440.10(2)(a); Figueroa, 1995 WL 702327, at *1–2; see also Heron v. Coughlin, No. 94 Civ. 1860 (GBD)(HBP), 2003 WL 21921267, at *1 (S.D.N.Y. Aug. 11, 2003) (noting that "dismissal pursuant to Section 440.10(2)(a) would give rise to a procedural bar" where "a defendant raises his . . . claims in the Appellate Division, where they are denied on the merits, but fails to assert these claims before the New York Court of Appeals" and, "[t]hereafter, the defendant attempts to raise the same claims denied on direct appeal by way of a Section 440.10 motion" and concluding that, "in this situation, on federal habeas review, the claims

35

should be found to be exhausted, but procedurally barred, because the claims can no longer be asserted in the state courts"); D'Alessandro v. Fischer, No. 01 Civ. 2551 (LTS)(DF), 2005 WL 3159674, at *19 (S.D.N.Y. Nov. 28, 2005) (finding that "the trial court's express reliance on CPL § 440.10(2)(a) indicates that the court rejected Petitioner's ineffective assistance claim on an independent and adequate state procedural ground, precluding federal habeas review").

While Petitioner claims that his appellate counsel was ineffective for having raised this claim on direct appeal in the first instance, he does not argue that counsel was ineffective for failing to present this claim in his request for leave to appeal, nor does he otherwise allege cause and prejudice or a fundamental miscarriage of justice to overcome this particular procedural deficiency.  Rather, Petitioner argues that "it was not possible to exhaust this claim on direct appeal, because the claim was *dehors* the record, and indeed was stricken from the record by the Appellate Division" and "[t]here was thus simply no avenue to raise the claim in the Court of Appeals."  Pet'r's Reply Mem. at 2–4.  Petitioner's position is belied, however, by the record that has been presented to the Court—specifically, the Second Department's decision setting forth the precise references that should be stricken from his direct appeal submission and the second replacement direct appeal brief that subsequently was submitted by Petitioner's appellate counsel.  See Carmody Aff., Exs. W, G.  Because Petitioner has neither demonstrated cause and prejudice for, nor a fundamental miscarriage of justice that might result from, his failure to present this claim to the Court of Appeals, this claim is deemed exhausted and procedurally defaulted.  See Reese, 37 F. App'x at 8; D'Alessandro, 2005 WL 3159674, at *19–20 (finding that "Petitioner's claim of ineffective assistance of trial counsel should be dismissed as procedurally barred" because he had "not shown any cause for his procedural default or prejudice resulting therefrom, nor has he shown that a fundamental miscarriage of justice would

occur without this Court's review of this claim").

I, therefore, respectfully recommend that Claim 4(a) be denied.

        b.      <u>Failure to Investigate and Call Witness Michael Cannaday</u>

Petitioner claims that his trial counsel was ineffective for having "failed to investigate and call witness Michael Cannaday, who could have contradicted the complainant's testimony that petitioner was a stranger who attacked her for no reason." Pet. at 11.  According to Petitioner, Cannaday "would have testified that he and [Petitioner] met . . . Cunningham and her friend Brenda at a mall weeks before the alleged attack" which would have "directly contradicted . . . Cunningham's testimony that she had never seen [Petitioner] prior to the alleged assault" and "severely undermined . . . Cunningham's credibility." Pet'r's Mem. at 24–25.  Respondent argues that this claim is without merit because (1) there is no indication that trial counsel knew Cannaday existed; (2) even assuming that counsel was aware of Cannaday, counsel's determination not to call him as a witness was a tactical one; and (3) Petitioner is unable to demonstrate prejudice.[11]  Resp't's Mem. at 46, 57–63.

Petitioner presented this claim to the trial court in his collateral motion pursuant to New York Criminal Procedure Law § 440.10.  See Carmody Aff., Ex. O at 29–34.  In denying this claim on the merits, the trial court held that "trial counsel's failure to call Cannaday as a witness" did not "amount[] to ineffective assistance of counsel" because (1) nothing in the record before the court "indicate[d] that trial counsel even knew of Cannaday's potential statement;" (2) Cannaday's credibility was questionable given that he and Petitioner were

_____

[11] While Respondent also argues that Petitioner asserted this claim on direct appeal and that it therefore may be deemed exhausted and procedurally barred, <u>see</u> Resp't's Mem. at 57 n.23, the Court notes that, in ruling on Petitioner's collateral motion, the trial court decided this claim on the merits and did not find that it already had been decided on direct appeal.  <u>See</u> Carmody Aff., Ex. Q at 10–11.

"friends from prison" and "Cannaday had a lengthy criminal history;" (3) Cannaday's testimony would have contradicted Petitioner's own statement to the police that Cunningham was unknown to him prior to the incident; and (4) "Cannaday did not claim to have been present at the time of the assault." Carmody Aff., Ex. Q at 11. Petitioner fully exhausted this claim in the state courts by presenting it to the Second Department in his letter requesting leave to appeal the trial court's decision. See Carmody Aff., Ex. Y at 37–39. Accordingly, this Court will consider the last-reasoned state court decision on the merits of this claim using the deferential AEDPA standard of review.

The Counsel Clause of the Sixth Amendment of the United States Constitution provides that a criminal defendant "shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The Supreme Court has construed this clause to afford criminal defendants the right to the *effective* assistance of counsel. See McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). A petitioner's ineffective assistance of counsel claim will succeed on the merits if the petitioner proves (1) that "counsel's representation fell below an objective standard of reasonableness," as measured under "prevailing professional norms," Strickland v. Washington, 466 U.S. 668, 688 (1984), and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694. A *habeas* petitioner bears the burden of proving both prongs of the Strickland test. See Greiner v. Wells, 417 F.3d 305, 319 (2d Cir. 2005). He therefore must prove that his attorney's actions were objectively unreasonable and that he was prejudiced to the extent that there exists a reasonable probability that the result of the proceeding would have been different. See Strickland, 466 U.S. at 687–96. To show that an attorney's conduct was unreasonable, the petitioner must overcome "a strong presumption that counsel's conduct falls

38

within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.

Additionally, a "fair assessment of attorney performance requires that every effort be made to

eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's

challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id.

Because a petitioner may succeed only by proving both Strickland prongs, "there is no

reason for a court deciding an ineffective assistance claim . . . to address both components of the

inquiry if the defendant makes an insufficient showing on one." Id. at 697.  Moreover, as the

Supreme Court has noted, "[e]stablishing that a state court's application of Strickland was

unreasonable under § 2254(d) is all the more difficult" given that "[t]he standards created by

Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem,

review is 'doubly' so." Harrington v. Richter, 131 S. Ct. 770, 788 (2011) (internal citations

omitted) (quoting Strickland, 466 U.S. at 689; Lindh v. Murphy, 521 U.S. 320, 333 n.7 (1997);

Knowles v. Mirzayance, 556 U.S. 111, 123 (2009)).

"Courts in this Circuit have made clear that '[t]he decision whether to call any witnesses

on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort

engaged in by defense attorneys in almost every trial.'" Batchilly v. Nance, No. 08 Civ. 7150

(GBD)(AJP), 2010 WL 1253921, at *39 (S.D.N.Y. Apr. 2, 2010) (quoting United States v.

Nersesian, 824 F.2d 1294, 1321 (2d Cir. 1987)) (Report and Recommendation), adopted, 2011

WL 1226260 (S.D.N.Y. Mar. 30, 2011).  Because "'[a] failure to call a witness for tactical

reasons of trial strategy does not satisfy the standard for ineffective assistance of counsel,'" the

decision not to call the witness, "'if reasonably made, will not constitute a basis for an

ineffective assistance claim.'" Rosas v. Artus, No. 05 Civ. 8440 (RJS), 2013 WL 499610, at *8

(S.D.N.Y. Jan. 29, 2013) (quoting Nersesian, 824 F.2d at 1321; United States v. Eyman, 313

F.3d 741, 743 (2d Cir. 2002)); see also Nieves-Andino v. Conway, No. 08 Civ. 5887 (NRB),

2010 WL 1685970, at *12 (S.D.N.Y. Apr. 20, 2010) (noting that, "since 'the presentation of

testimonial evidence is a matter of trial strategy and because allegations of what a witness would

have testified to are largely speculative,' habeas claims based [on] uncalled witnesses are

disfavored") (quoting Gomez v. Duncan, No. 02 Civ. 0846 (LAP)(AJP), 2004 WL 119360, at

*31 n.41 (S.D.N.Y. Jan. 27, 2004) (Report and Recommendation), aff'd, 317 F. App'x 79 (2d

Cir. 2009)).

 Even assuming *arguendo* that Petitioner's trial counsel was aware of Cannaday's

existence and willingness to testify, this Court concludes that it would have been a reasonable

strategic decision for trial counsel not to call him as a witness at trial given that Petitioner's own

statement regarding Cunningham having been a stranger to him already had been admitted in

evidence and given Cannaday's questionable credibility.  The state court's denial of this claim

was neither contrary to, nor expressed an unreasonable application of, Strickland.

 Accordingly, I respectfully recommend that Claim 4(b) be denied.

  c. Failure to Call Witness Jillian Hearn

 Petitioner claims that trial counsel was ineffective for having "failed to call Jillian Hearn

at a pretrial Huntley [*sic*] hearing to corroborate petitioner's claim of coercion by the police."

Pet. at 11.  Petitioner argues that "Hearn was questioned by [the same detective as Petitioner] in

relation to this case and was both subjected to abusive behavior and similarly refused her request

for an attorney" and would have testified accordingly which would have "bolstered petitioner's

contention that [the] detectives . . . subjected [him] to abusive behavior and refused his request to

both remain silent and to consult an attorney."  Pet'r's Mem. at 26–27.  Respondent opposes this

claim on the merits.  See Resp't's Mem. at 70–72.

Petitioner presented this claim to the state courts in his collateral motion pursuant to New York Criminal Procedure Law § 440.10. See Carmody Aff., Ex. O at 34–36. In denying this claim on the merits, the trial court found that (1) "as a friend of" Petitioner, Hearn was "clearly an interested witness;" (2) she "was not alleged to have been present at the time [Petitioner] was taken into custody and when he gave the statements at issue" and therefore "could not have testified as to what actually occurred at that time;" and (3) given that "the suppression court found the testimony of police Detectives Holubis and Connolly to be credible, . . . it is mere speculation that the testimony of Jillian Hearn, if she had testified, would have altered the court's view of the credibility of these police witnesses." Id., Ex. Q at 14. Because Petitioner fully exhausted this claim by presenting it in his request for leave to appeal to the Second Department, see id., Ex. Y at 39–41, the Court will consider the merits of this claim applying the deferential AEDPA standard of review.

Because, as noted above, "'allegations of what a witness would have testified to are largely speculative,'" "habeas claims based [on] uncalled witnesses are disfavored." Nieves-Andino, 2010 WL 1685970, at *12 (quoting Gomez, 2004 WL 119360, at *31 n.41). Additionally, as discussed above, a decision made by trial counsel regarding whether to call a particular witness ordinarily is a matter of defense strategy and will not constitute a claim for ineffective assistance as long as it was reasonable. See Rosas, 2013 WL 499610, at *8. The Court agrees with Respondent that trial counsel, as a matter of trial strategy, could reasonably have determined that Hearn's testimony would not have bolstered Petitioner's testimony given that Hearn was an interested witness, was not present at the time of Petitioner's interrogation, and may have been unwilling to testify, either entirely or in part, due to her own ongoing criminal matter. Additionally, as the trial court held, Petitioner has failed to demonstrate that he

41

was prejudiced by counsel's failure to call Hearn at the suppression hearing because he has not

shown any reasonable probability that Hearn's testimony would have caused the trial court to

discredit the testimony provided by the police officers who testified at the hearing.  See Gomez,

2004 WL 119360, at *31 (noting that petitioner must demonstrate "exactly what testimony the

[purported witness] would have supplied *and how such testimony would have changed the*

*result*") (emphasis added).  The Court is not persuaded that trial counsel's failure to call Hearn as

a witness at the suppression hearing constituted ineffective assistance of counsel, and the state

court determination on this issue was neither contrary to, nor an unreasonable application of,

Strickland.

      I respectfully recommend that Claim 4(c) be denied.

      d.    Failure to Allow Petitioner to Testify at Trial

      Petitioner claims that trial counsel was ineffective for having "refused to allow petitioner

to testify at trial, despite the fact that it was a bench trial and petitioner had testified at a pretrial

hearing." Pet. at 11.  Petitioner argues that he "expressed his wish to testify but was refused by

his trial counsel on the basis that [counsel] did not believe his story." Pet'r's Mem. at 27.

Petitioner contends that "his counsel never told him that the final decision concerning whether to

testify was his, but simply refused to put him on the stand." Id.  Had he been permitted to

testify, Petitioner alleges, he would have represented that he had met Cunningham and her friend

Brenda previously and had arranged to meet them in the parking lot on the day of the incident in

order to collect money that they owed him.  See id.  Petitioner further would have testified that

Cunningham ignored him and that, after he approached her, she stunned him with a stun gun that

she had in her possession.  See id.  Petitioner claims that his counsel's failure to conduct an

investigation for corroborating evidence led him to discredit Petitioner's version of events and

therefore prevent Petitioner from testifying.  See id. at 28.  Respondent argues that Petitioner's

claim is belied by the trial record and otherwise is without merit.  See Resp't's Mem. at 53–57.

Petitioner raised this claim with the trial court in his collateral motion pursuant to New

York Criminal Procedure Law § 440.10.  See Carmody Aff., Ex. O at 36–39.  The trial court

denied this claim on the ground that it was "directly contradicted by the court record in this

case."  Id., Ex. Q at 12 (citing N.Y. Crim. Proc. Law § 440.30(4)(d)).  Citing the trial transcript,

the court noted that, at the close of the defense case, the following colloquy had taken place

between Petitioner and his trial counsel:

> MR. WARHIT:     Judge, at this time, the defense rest [sic].  But since it is the
> defendant's absolute right to testify, I would want the Court
> to directly inquire of him if he understands that, if the
> Court would do that, and has decided not to testify, or I can
> ask him directly.  I'm not putting him on the stand.  I will
> ask him right now.  Mr. Ramos, have you decided not to
> testify in this case?
>
> THE DEFENDANT:  Under advise [sic] of my counsel.
>
> MR. WARHIT:     You have decided not to testify; am I correct?
>
> THE DEFENDANT:  Yes.
>
> MR. WARHIT:     Defense rest [sic], Judge.

Trial Tr. at 836; Carmody Aff., Ex. Q at 12.  In the trial court's view, this exchange, which

appeared on the court record, "directly contradicted" Petitioner's "contention that his counsel

refused to allow him to testify."  Carmody Aff., Ex. Q at 13.  The court further found that,

"under these and all the other circumstances attending the case, there is no reasonable possibility

that such allegation is true" and therefore Petitioner's claim was "procedurally barred" under

New York Criminal Procedure Law § 440.30(4)(d).  Id.  The court further concluded that, "in

light of the fact that [Petitioner] had already testified at the Huntley hearing and the trial judge

chose not to credit his testimony, it was a legitimate tactic for [his] trial counsel to advise him not to testify at the trial." Id.  Because Petitioner presented this claim in his request for leave to appeal to the Second Department, see Carmody Aff., Ex. Y at 41–44, the claim is fully exhausted.  The Court will consider Petitioner's claim on the merits pursuant to AEDPA's deferential standard of review.[12]

"'[T]he decision whether to testify belongs to the defendant and may not be made for him by defense counsel,'" and "defense counsel has a duty to inform the defendant of that right." Bennett v. United States, 663 F.3d 71, 84 (2d Cir. 2011) (quoting Brown v. Artuz, 124 F.3d 73, 78 (2d Cir. 1997)).  "Although counsel should always advise the defendant about the benefits and hazards of testifying and of not testifying, and may strongly advise the course that counsel thinks best, counsel must inform the defendant that the ultimate decision whether to take the stand belongs to the defendant" and "must abide by the defendant's decision on this matter." Id. (quoting Brown, 124 F.3d at 79).  Where a defendant claims "that defense counsel has not discharged this responsibility—either by failing to inform the defendant of the right to testify or by overriding the defendant's desire to testify," he "must satisfy the two prong test established in Strickland . . . for assessing whether counsel has rendered constitutionally ineffective assistance." Id. (quoting Brown, 124 F.3d at 79).

---

[12] While the trial court concluded that Petitioner's claim was "procedurally barred" pursuant to New York Criminal Procedure Law § 440.30(4)(d), this Court notes that "[t]here is a split of authority within the Second Circuit as to whether denial of a motion pursuant to C.P.L. § 440.30(4)(d) is an 'independent and adequate' state procedural bar." Skinner v. Duncan, No. 01 Civ. 6656 (DAB)(AJP), 2003 WL 21386032, at *27 (S.D.N.Y. June 17, 2003) (listing cases) (Report and Recommendation).  Because the statute "specifically states that '[u]pon considering the merits of the motion, the court may deny it without conducting a hearing' if certain conditions exist," this Court agrees with those courts that have concluded that a state court decision rendered on this ground is a "merits based decision, not a procedural bar." Id. at *28 (second emphasis added).

44

As the trial court concluded, the transcript of Petitioner's trial belies Petitioner's claim that his counsel failed to inform him of his right to testify or otherwise prevented him from testifying. It is evident from the transcript that trial counsel acknowledged in Petitioner's presence that "it is the defendant's absolute right to testify" and asked whether, with knowledge of that right, Petitioner had decided not to testify. Trial Tr. at 835. While Petitioner indicated that he had decided not to testify "[u]nder advise [*sic*] of his counsel," id. at 835–36, as noted above, trial "counsel should always advise" his client regarding whether to testify "and may strongly advise the course that counsel thinks best." Bennett, 663 F.3d at 84 (quoting Brown, 124 F.3d at 79). As the trial court noted, it was a reasonable and "legitimate tactic" for trial counsel "to advise [Petitioner] not to testify at the trial" given that the trial judge previously had discredited Petitioner's testimony during the suppression hearing. Carmody Aff., Ex. Q at 13. Accordingly, Petitioner has not demonstrated that his trial counsel's conduct was deficient or that the state court's determination of this claim was contrary to, or constituted an unreasonable application of, clearly established federal law.

I therefore respectfully recommend that Claim 4(d) be denied.

e.    Failure to Object to Material Misstatements in Pre-Sentence Report

Petitioner claims that trial counsel was ineffective for "fail[ing] to object to material misstatements of fact in the presentence report." Pet. at 11. Petitioner argues that, because trial counsel "failed to object to . . . three egregious errors" in the report, these errors "became a basis upon which the court sentenced petitioner" and that this constituted ineffective assistance because Petitioner "had a due process right not to be sentenced based on incorrect facts." Pet'r's Mem. at 29; see also id. at 28–31. Respondent argues that this claim is unexhausted, procedurally defaulted, and without merit. See Resp't's Mem. at 73–77.

45

Petitioner first raised this claim on direct appeal.  See Pet'r's App. Br. at 56–57.  After this claim was denied by the Appellate Division, Petitioner did not raise it in his letter requesting leave to appeal to the New York Court of Appeals.  See Carmody Aff., Ex. X.  Petitioner did, however, present this claim in his collateral motion pursuant to New York Criminal Procedure Law § 440.10 to the trial court.  See Carmody Aff., Ex. O at 39–41.  In ruling on this claim, the trial court held that, "[s]ince [Petitioner] raised this specific claim on his direct appeal, it is procedurally barred."  See Carmody Aff., Ex. Q at 15 (citing N.Y. Crim. Proc. Law § 440.10(2)(a)) (internal citation omitted).  The court further held that, "[m]oreover, since the . . . claim of ineffectiveness of counsel in this regard is record-based, it is not properly brought on a motion pursuant to CPL 440.10."  Id. (citing N.Y. Crim. Proc. Law § 440.10(2)(c)).  The court alternatively denied Petitioner's claim on the merits.  See id. at 15–16.

Because Petitioner presented this claim to the Appellate Division on direct appeal but then failed to raise it in his request for leave to appeal, he failed to fully exhaust the claim in the state courts.  See Jordan, 206 F.3d at 198–99; Figueroa, 1995 WL 702327, at *1–2.  This claim may be deemed exhausted and procedurally defaulted, however, because, as the trial court held in its decision on Petitioner's collateral motion, Petitioner is barred from raising this claim—which appears on the record and was decided on the merits on direct appeal—in the state courts.  See N.Y. Crim. Proc. Law §§ 440.10(2)(a), 440.10(2)(c); see also Heron, 2003 WL 21921267, at *1; Figueroa, 1995 WL 702327, at *1–2.  Petitioner has alleged neither cause and prejudice for, nor a fundamental miscarriage of justice that might result from, his failure to present this claim to the Court of Appeals, and, therefore, this claim is deemed exhausted and procedurally defaulted.  See Reese, 37 F. App'x at 8; D'Alessandro, 2005 WL 3159674, at *19–20.

46

Accordingly, I respectfully recommend that Claim 4(e) be denied.

> f.      Abandonment of Petitioner at Persistent Felony Offender Hearing and
>         Sentencing

Petitioner claims that trial counsel was ineffective for having "totally abandoned

petitioner at the persistent felony offender hearing and at sentencing."  Pet. at 11; see also Pet'r's

Mem. at 28–31.  As with Claim 4(e), Petitioner first presented this claim to the Appellate

Division on direct appeal, see Pet'r's App. Br. at 56–57, but failed to raise it in his request for

leave to appeal to the Court of Appeals after the Second Department denied it on the merits, see

Carmody Aff., Ex. X.  When Petitioner thereafter raised this claim in his collateral motion to the

trial court, see id., Ex. O at 41–44, the court apparently considered this claim in conjunction with

Claim 4(e) and denied this claim on the same grounds as discussed above.  See id., Ex. Q at

14–16 (citing N.Y. Crim. Proc. Law §§ 440.10(2)(a), 440.10(2)(c)).

Accordingly, for the same reasons as set forth above with regard to Claim 4(e), this Court

concludes that Petitioner failed to exhaust this claim but that the claim may be deemed exhausted

and procedurally defaulted.  See Jordan, 206 F.3d at 198–99; Heron, 2003 WL 21921267, at *1;

Figueroa, 1995 WL 702327, at *1–2; N.Y. Crim. Proc. Law §§ 440.10(2)(a), 440.10(2)(c).

Because Petitioner has demonstrated neither cause and prejudice nor a fundamental miscarriage

of justice that might excuse his failure to exhaust, I respectfully recommend that Claim 4(f) be

denied.

> g.      Failure to Discredit Cunningham as Witness

Petitioner claims that trial counsel was ineffective for having "failed to discredit the

complaining witness."  Pet. at 11.  Respondent opposes this claim on the grounds that Petitioner

failed to exhaust this claim in the state courts and that the claim otherwise is without merit.  See

47

Resp't's Mem. at 72–73.

Petitioner presented this claim to the Second Department on direct appeal.  See Pet'r's

App. Br. at 53–55.  After the Second Department denied the claim on the merits, Petitioner

failed to raise it in his request for leave to appeal.  See Carmody Aff., Ex. X.  Petitioner's failure

to include this claim in his request for leave to appeal constitutes a failure to exhaust.  See

Jordan, 206 F.3d at 198–99; Figueroa, 1995 WL 702327, at *1–2.  This claim may be deemed

exhausted and procedurally defaulted, however, because Petitioner is now unable to raise this

record-based claim in the state courts.  See N.Y. Crim. Proc. Law §§ 440.10(2)(a), 440.10(2)(c);

see also Heron, 2003 WL 21921267, at *1; Figueroa, 1995 WL 702327, at *1–2.  Petitioner is

unable to overcome the procedural default because he has not alleged cause and prejudice nor a

fundamental miscarriage of justice that might excuse his failure to present this claim to the Court

of Appeals.  See Reese, 37 F. App'x at 8; D'Alessandro, 2005 WL 3159674, at *19–20.

Thus, I respectfully recommend that Claim 4(g) be denied.

h.    Cumulative Weight of Errors

Petitioner "contends that the cumulative weight of [trial] counsel's errors amounted to

ineffective assistance."  Pet. at 11.  Respondent argues that, when considered in the aggregate,

counsel's overall performance was not constitutionally deficient, particularly given that counsel

succeeded in obtaining dismissal of some of the charges against Petitioner despite strong

evidence of guilt.  See Resp't's Mem. at 51–53.

The Second Circuit indeed has held that alleged errors by counsel must be considered "in

the aggregate" because "Strickland directs us to look at the 'totality of the evidence before the

judge or jury,' keeping in mind that '[s]ome errors [] have . . . a pervasive effect on the

inferences to be drawn from the evidence, altering the entire evidentiary picture . . . .'"

Lindstadt v. Keane, 239 F.3d 191, 199 (2d Cir. 2001) (quoting Strickland, 466 U.S. at 695–96).

Accordingly, "[i]n evaluating the prejudice suffered by a petitioner as a result of counsel's

deficient performance, the court looks to the 'cumulative weight of error' in order to determine

whether the prejudice 'reache[s] the constitutional threshold.'" Bligen v. Burge, No. 06 Civ.

1375 (CM)(HBP), 2008 WL 5336693, at *6 (S.D.N.Y. Oct. 20, 2008) (quoting Lindstadt, 239

F.3d at 202) (Report and Recommendation), adopted in part, 2008 WL 5351995 (S.D.N.Y. Dec.

22, 2008).  The Court does not reach the prejudice prong of the Strickland test on Petitioner's

ineffective assistance claims, however, because, for Claims 4(a), (e), (f), and (g), the Court does

not consider the merits at all due to Petitioner's procedural default and, for Claims 4(b), (c), and

(d), the Court concludes that trial counsel's alleged errors reflected reasonable trial strategy and

therefore do not satisfy the first prong of the Strickland test.

     Accordingly, for the reasons set forth above, I respectfully recommend that Claim 4 be

denied in its entirety.

     5.     *Ineffective Assistance of Appellate Counsel (Claim 5)*

     Petitioner claims that his appellate counsel was ineffective for having "asserted several

grounds on appeal which were based on matters *dehors* the record" and having then "failed to

withdraw those grounds after the Appellate Division struck their evidentiary basis from the

appellant's appendix, thus leading to the claims being decided prematurely and depriving

petitioner of the right to litigate them in a procedurally proper forum."  Pet. at 12; see also

Pet'r's Mem. at 31–37.  Specifically, Petitioner argues that counsel was deficient for having

raised trial counsel's failure to call a medical expert on direct appeal because off-the-record

ineffective assistance of trial counsel claims, such as this, should be raised via collateral motion.

See id.  Petitioner further argues that this deficiency caused him prejudice because it

49

procedurally barred Petitioner from obtaining a merits decision on this claim from the collateral motion court. See id. Respondent opposes this claim on the merits. See Resp't's Mem. at 78–82. While Respondent acknowledges that the "'proper procedural vehicle under New York law for raising a claim of ineffective assistance of trial counsel is generally not a direct appeal' but a motion to the trial court to vacate the judgment," Respondent argues that, nevertheless, Petitioner's claim fails because he is unable to show prejudice given that, in its alternative merits ruling, the collateral motion court denied the underlying ineffective assistance of trial counsel claim. See id. at 80–82 (quoting Otero v. Stinson, 57 F. Supp. 2d 415, 418 (S.D.N.Y. 1999)).

Petitioner presented this claim to the Second Department in his application for a writ of error coram nobis to the Second Department. See Carmody Aff., Ex. S at 1–12. After the Second Department denied Petitioner's application on the merits, id., Ex. U, Petitioner requested leave to appeal this claim to the New York Court of Appeals, but this request was denied, Carmody Aff., Ex. V. Because Petitioner fully exhausted this claim in the state courts, and because the Second Department decided this claim on the merits, this Court will decide Claim 5 using the AEDPA deferential standard of review.

As discussed above, pursuant to Strickland, Petitioner must demonstrate both that (1) his appellate counsel's "representation fell below an objective standard of reasonableness," as measured under "prevailing professional norms," and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 688, 694. If a petitioner "makes an insufficient showing on one" of these prongs, "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry." Id. at 697. Even assuming arguendo that appellate counsel's having raised trial counsel's failure to call an expert on direct appeal, rather than via

collateral motion, constituted deficient conduct pursuant to Strickland, the Court agrees with

Respondent that Petitioner has failed to demonstrate prejudice.  In considering the merits of this

claim, albeit in the alternative, the trial court determined that, "[a]lthough [Petitioner] now

contends that the affidavit of a medical expert, Dr. Spitz, would have cast doubt on the ability of

the stun gun in this case to cause serious injury, the trial Court found that the stun gun was used

'to stun the victim and to strike her with it' and was a dangerous instrument under the

circumstances in which it was used." See Carmody Aff., Ex. Q at 9.  The trial court continued:

"Since the Court's finding in this case was largely based on the manner in which the stun gun

was used, i.e., to strike the victim, the testimony of a medical expert regarding the stun gun's

capabilities of causing injury by its electrical current was not likely to have altered the outcome."

Id.  There is no indication that the trial court would have decided this claim differently on the

merits had it not first been presented on direct appeal, and the Court therefore is unable to

conclude that "there is a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different." Strickland, 466 U.S. at 694.

I therefore respectfully recommend that Claim 5 be denied.

6.      *Unconstitutional Sentence (Claim 6)*

Petitioner claims that he was "unconstitutionally sentenced" because the "trial court

improperly (a) used an enhanced misdemeanor as a predicate for sentencing petitioner as a

persistent felony offender; and (b) deemed petitioner a persistent felony offender and persistent

violent felony offender based on facts not admitted or proven to a jury." Pet. at 12.  Petitioner

also argues that (c) his due process rights were violated "when he was sentenced based on

incorrect facts in the [pre-sentence report]." Pet'r's Mem. at 39.  In opposition, Respondent

argues that Petitioner's sentencing claims fail to raise federal constitutional issues that are

cognizable on *habeas* review, are procedurally barred, and are without merit.  See Resp't's Mem. at 83–90.

      a.     <u>Double Enhancement</u>

Petitioner argued on direct appeal that it was improper under New York state law for him to be sentenced as a persistent felony offender on his criminal possession of a weapon conviction due to "double enhancement."  Pet'r's App. Br. at 36–40.  In Petitioner's view, he was sentenced improperly because his prior convictions were used first to enhance his criminal possession of a weapon convictions to third-degree, felony convictions—as opposed to fourth-degree, misdemeanor convictions—pursuant to New York Penal Law § 265.02(1) and then to enhance his sentence for these same criminal possession of a weapon convictions pursuant to New York's persistent felony offender statute, New York Penal Law § 70.10.  See <u>id.</u>  In addition to being contrary to state law, Petitioner argued that this double enhancement violated the Eighth Amendment to the United States Constitution because it resulted in a sentence that was disproportionate to the crimes committed.  See <u>id.</u> at 41–43.  The Appellate Division denied this claim on the merits, and Petitioner presented it to the Court of Appeals in his request for leave to appeal, though this request was denied.  See Carmody Aff., Ex. X.  Petitioner thereafter raised this claim in his collateral motion to vacate the sentence pursuant to New York Criminal Procedure Law § 440.20.  See <u>id.</u>, Ex. J at 2–8.  The trial court rejected this claim on the ground that it previously had been decided on the merits on direct appeal.  See <u>id.</u>, Ex. M at 3 (citing N.Y. Crim. Proc. Law § 440.20(2)).  Petitioner's request for leave to appeal was denied by the Second Department.  See Carmody Aff., Ex. N.

It is well-settled that "[n]o federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law."  <u>White v. Keane</u>, 969 F.2d 1381, 1383 (2d Cir.

1992) (per curiam).  Additionally, as the Second Circuit recently held, "[w]hether a New York court erred in applying a New York recidivist sentencing enhancement statute is a question of New York State law," and "it is well-established that '[i]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.'"  Saracina v. Artus, 452 F. App'x 44, 46 (2d Cir. 2011) (quoting Estelle v. McGuire, 502 U.S. 62, 67–68 (1991)). Accordingly, Petitioner's double enhancement claim is a state law claim that is not cognizable on *habeas* review, and I respectfully recommend that it be denied.

   b.  Findings of Fact Neither Admitted Nor Proven to Jury

  As noted above, in his petition, Petitioner claims that his sentence was unconstitutional because he was determined to be a persistent felony offender and persistent violent felony offender in accordance with New York law "based on facts not admitted or proven to a jury." Pet. at 12.  On direct appeal, Petitioner argued that the persistent felony offender hearing conducted by the trial court was unconstitutional because Petitioner had a "right to have post trial issues decided by jury."  Pet'r's App. Br. at 60.  After the Second Department denied Petitioner's sentencing claims on the merits, Petitioner argued in his request for leave to appeal to the Court of Appeals that Petitioner's sentence may have been illegal because it "was enhanced based on facts not found by the jury."  Carmody Aff., Ex. X.  The Court of Appeals denied Petitioner's request for leave to appeal.  Ramos, 10 N.Y.3d at 770.

  In his motion to vacate his sentence pursuant to New York Criminal Procedure Law § 440.20, Petitioner argued that his sentence was unlawful because New York's discretionary persistent felony offender statute was unconstitutional pursuant to the "Apprendi line of cases" and its mandatory persistent felony offender statute was unconstitutional because "five of nine Supreme Court justices have opined that the Almendarez-Torres case was wrongly decided."

See Carmody Aff., Ex. J at 8–23 (typeface altered from original).  In ruling on this claim, the trial court held that, because Petitioner "challenged the propriety of his sentence as a persistent felony offender . . . on his direct appeal from the judgment of conviction, this issue was previously determined on the merits and denial of the instant motion is mandated."  Id., Ex. M at 3 (citing N.Y. Crim. Proc. Law § 440.20(2)).  The court then "[a]ssum[ed] arguendo" that Petitioner had not raised the constitutionality of New York's persistent felony offender law on direct appeal and rejected Petitioner's claims on the merits.  Id., Ex. M at 3–5.  Petitioner's request for leave to appeal the trial court's decision was denied by the Second Department.  See id., Ex. N.

Respondent argues that Petitioner failed to properly present this claim on direct appeal and that the claim is now procedurally barred.  See Resp't's Mem. at 84–85.  The Court disagrees.  As discussed above, Petitioner argued on direct appeal that the persistent felony offender hearing conducted by the trial court, and the enhanced sentence that resulted therefrom, were unconstitutional and violated his right to have post-trial matters decided by a jury.  See Pet'r's App. Br. at 60 (citing Cunningham v. California, 549 U.S. 270 (2007)); Carmody Aff., Ex. X (citing Cunningham, 549 U.S.; Blakely v. Washington, 542 U.S. 296 (2004)).  Because the claim was fairly presented and because the state court denied the claim on the merits, this Court will consider the merits of the claim pursuant to the deferential AEDPA standard of review.

In Apprendi, the Supreme Court held that, "[o]ther than the fact of a prior conviction," as held by the Court in Almendarez-Torres, 523 U.S., "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  Apprendi, 530 U.S. at 490; see also Portalatin v. Graham, 624 F.3d 69, 79 (2d Cir. 2010) ("In the seminal case of Apprendi v. New Jersey, the Supreme Court applied the

Sixth Amendment's guarantee to a trial by an impartial jury to a state law triggering enhanced sentencing ranges based on judicial factfinding."). "The rule of Apprendi was later reinforced in Ring v. Arizona, in which the Supreme Court struck down a capital sentencing scheme that vested the trial judge with the discretion to determine the presence or absence of statutorily enumerated aggravating factors required for the imposition of a death sentence." Portalatin, 624 F.3d at 80 (citing Ring, 536 U.S. 584, 588 (2002)). In Blakely v. Washington, the Supreme Court "clarified that a sentencing scheme can violate the Sixth Amendment even if those 'facts' that a sentencing judge is required to find are not specifically enumerated by statute" and that "the Apprendi maximum is the sentence that is authorized based solely on those factual predicates that are found within the constraints of the Sixth Amendment," specifically, "those facts that are: (1) proven to a jury beyond a reasonable doubt; (2) admitted by the defendant; or (3) findings of recidivism." Portalatin, 624 F.3d at 81–82 (citing Blakely, 542 U.S. at 301, 303–05). In Cunningham v. California, the Supreme Court "reaffirmed the principle announced in Blakely that a sentence must be fully authorized by factual predicates obtained in compliance with the Constitution" and held that, "'[i]f the jury's verdict alone does not authorize the sentence, if, instead, the judge must find an additional fact to impose the longer term, the Sixth Amendment requirement is not satisfied.'" Portalatin, 624 F.3d at 83 (quoting Cunningham, 549 U.S. at 290).

> New York's discretionary persistent felony offender statute provides:
>
> When the court has found . . . that a person is a persistent felony offender, and when it is of the opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct indicate that extended incarceration and life-time supervision will best serve the public interest, the court . . . may impose the sentence of imprisonment authorized . . . for a class A-I felony. In such event the reasons for the court's opinion shall be set forth in the record.

N.Y. Penal Law § 70.10(2).  The New York Court of Appeals has repeatedly held that this law comports with the Apprendi line of cases because the only finding of fact that is necessary for the imposition of the higher sentence is the fact of recidivism.  See People v. Quinones, 12 N.Y.3d 116, 130–31 (2009); People v. Rivera, 5 N.Y.3d 61, 66–69, 71 (2005); People v. Rosen, 96 N.Y.2d 329, 334–36 (2001).  The Court of Appeals has explained that, while the law also instructs courts to consider their opinion of defendants' characters and histories, courts engage in this consideration only after they have determined that the defendants are eligible for the enhanced sentence based solely on the fact of their recidivism.  See id.

The Second Circuit also has repeatedly upheld the constitutionality of New York's discretionary persistent felony offender statute, in light of the New York Court of Appeals' construction thereof.  See Portalatin, 624 F.3d at 88–94; Brown v. Miller, 451 F.3d 54, 57–59 (2d Cir. 2006); Brown v. Greiner, 409 F.3d 523, 534–35 (2d Cir. 2005).  Petitioner's claim that his sentence, which was issued in accordance with New York's approved statutory scheme, was unconstitutional because it was based on facts neither admitted nor proven to a jury thus fails, and the state court denial of this claim on the merits was neither contrary to, nor an unreasonable application of, clearly established federal law.[13]  I respectfully recommend that this claim be denied.

c.      Misstatements in Pre-Sentence Report

Petitioner raised this claim on direct appeal, where he argued that "[t]he inaccuracy of the

---

[13] The Court further notes that Petitioner's claim that New York's mandatory persistent felony offender statute also is unconstitutional fails.  On its face, that statute requires only the fact of recidivism to warrant the imposition of the enhanced sentence and is constitutional pursuant to Almendarez-Torres, 523 U.S., which, despite Petitioner's challenge, remains good law.  See N.Y. Penal Law § 70.08(2); Portalatin, 624 F.3d at 92 n.14 (noting that "'Almendarez-Torres continues to bind this court in its application of Apprendi'") (quoting United States v. Snype, 441 F.3d 119, 148 (2d Cir. 2006)).

Pre-Sentence Report denied [him] due process" and resulted in a wrongful sentence for his

assault conviction.  Pet'r's App. Br. at 57.  The alleged misstatements set forth in the report, and

otherwise made during the sentencing proceeding, included references to Petitioner being a

"'sexual predator,'" despite Petitioner never having been convicted of a sex crime.  See id. at

57–60.  After this claim was denied on the merits by the Second Department, Petitioner raised it

in his request for leave to appeal to the Court of Appeals, which also was denied.  See Carmody

Aff., Ex. X; Ramos, 10 N.Y.3d at 770.  Respondent opposes this claim on the merits.  See

Resp't's Mem. at 74–77, 83.  Because Petitioner fully exhausted this claim before the state

courts, this Court considers the merits of the claim using the deferential AEDPA standard of

review.

       As noted above, "[i]n general, a state prisoner's challenge to his sentence is not

cognizable on habeas review, provided the sentence falls within the statutorily mandated

guidelines of the state."  Joyner v. Ercole, No. 06-CV-0486 (RJD)(JO), 2010 WL 4457769, at

*19 (E.D.N.Y. Apr. 23, 2010) (Report and Recommendation), adopted as modified, 2010 WL

4457711 (E.D.N.Y. Nov. 1, 2010).  The Supreme Court, however, "has established an exception

to this rule where the sentence is based in part on misinformation of 'constitutional magnitude.'"

Id. (quoting United States v. Tucker, 404 U.S. 443, 447 (1972)).  The Second Circuit has held

that "due process forbids sentencing a defendant on the basis of materially false information or

'a material misapprehension of fact,' and requires that the defendant must be given notice of and

an opportunity to contest those facts on which his sentence is based."  Id. (quoting Torres v.

United States, 140 F.3d 392, 404 (2d Cir. 1998)).

       The sentencing transcript demonstrates that Petitioner and his trial counsel received an

opportunity to review the pre-sentence report and to challenge the facts set forth therein.  See

Sentencing Tr. at 2–5, 15–25.  Because Petitioner does not allege that he was denied "an opportunity to contest those facts on which his sentence is based," and since the record shows that he did receive such an opportunity, "the question before this court is whether the state court that sentenced [Petitioner] relied on materially false information or a material misapprehension of fact."  Joyner, 2010 WL 4457769, at *19.  In explaining its sentence, the trial court noted that (1) in the court's view, it had been a "mistake" that Petitioner previously had been released after having served only eight years on a sentence of eight years to life given Petitioner's significant criminal history; (2) within three months of that release Petitioner was "back . . . in jail" which was "predictable by looking at who [Petitioner was] and where [he had] been previously;" (3) Petitioner had "clearly . . . demonstrated that [he was] not capable of being in the community and having this type of freedom;" and (4) Petitioner "persistently violate[d] in a violent manner the laws that we live by" and, "[w]hen [he] is out and free [he does not] seem to be too concerned about what the laws are and what respect is that someone should have for them."  Sentencing Tr. at 31–32.  Even assuming *arguendo* that misstatements were presented in the pre-sentence report or during the sentencing proceeding, there is no indication in the record that the trial court actually relied on any of the alleged misstatements referenced by Petitioner in issuing its sentence.  Accordingly, this claim is without merit, and the state court determination denying this claim was neither contrary to, nor constituted an unreasonable application of, clearly established federal law.  See Joyner, 2010 WL 4457769, at *20 (concluding that "sentencing court was under no material misapprehension" where there was "no indication in the record that the sentencing court relied on" allegedly false information in deciding "to increase the sentence in this case pursuant to a recidivism statute").  This claim therefore should be denied.

　　　　For the reasons set forth above, I respectfully recommend that Claim 6 be denied in its

58

entirety.

## IV.  CONCLUSION

For the reasons set forth above, I conclude—and respectfully recommend that Your Honor should conclude—that the petition should be **DENIED**.  Further, because reasonable jurists would not find it debatable that Petitioner has failed to demonstrate by a substantial showing that he was denied a constitutional right, I recommend that no certificate of appealability be issued.  See 28 U.S.C. § 2253(c); Slack v. McDaniel, 529 U.S. 473, 483–84 (2000).

Dated: September 19, 2013
      White Plains, New York

Respectfully submitted,

Paul E. Davison
United States Magistrate Judge

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to serve and file written objections.  See also Fed. R. Civ. P. 6(a), (b), (d).  Such objections, if any, along with any responses to the objections, shall be filed with the Clerk of the Court with extra copies delivered to the chambers of the Honorable Vincent Briccetti, at the Honorable Charles L. Brieant, Jr. Federal Building and United States Courthouse, 300 Quarropas Street, White Plains, New York 10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Briccetti.